748 So.2d 580 (1999)
HEALTHCARE MANAGEMENT SERVICES, INC. and Philip Tripi, Individually, Plaintiffs-Appellants,
v.
VANTAGE HEALTHPLAN, INC., Defendant-Appellee.
No. 32,523-CA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 1999.
Bernard J. Grenrood, Jr., Monroe, Counsel for Appellants.
Theus, Grisham, Davis & Leigh, LLP by Sharon I. Marchman, Monroe, Counsel for Appellee.
Before STEWART, GASKINS and CARAWAY, JJ.
GASKINS, J.
The plaintiffs, Healthcare Management Services, Inc. and Philip Tripi, filed a petition alleging tortious interference with contract against the defendant, Vantage Healthplan, Inc. Pursuant to the defendant's exception of no cause of action, the trial court dismissed the plaintiffs' suit without giving an opportunity to amend the petition to eliminate the objection. For the reasons that follow, we affirm the trial court judgment.

*581 FACTS
The plaintiffs, Healthcare Management Services, Inc., (HMSI) and Philip Tripi, allege that the defendant, Vantage Healthplan, Inc. (Vantage), tortiously interfered with a management contract between HMSI and the City of Monroe (City) concerning administration of a self-insured healthcare plan for the city. According to the plaintiffs' petition, Vantage "induced" the City to "abrogate" its contract with HMSI and to "switch from being selfinsured to purchasing a managed healthcare plan sold and administered by Vantage." The plaintiffs further allege that the actions of Vantage and the City precipitated cancellation of the plan which HMSI had contracted to manage and administer, and resulted "in a condition that made it impossible" for HMSI to effectively manage claims on behalf of the City and its participating employees.
According to the plaintiffs' petition, Vantage was aware of the contract between HMSI and the City, but still "encouraged and assisted" the City, the City Counsel, and the Mayor to "abrogate" the contract between HMSI and the City.
As a result of these alleged actions, the plaintiffs assert that HMSI sustained damages that forced it to cease doing business and to be responsible for debts incurred due to the breach of the terms and conditions of the contract. Philip Tripi, alleged to be the sole owner of HMSI, its president, and its guarantor on obligations, contends that the alleged tortious interference by Vantage caused him to sustain damages individually. Some of the itemized damages asserted include: (1) loss of present and future income; (2) the humiliation of dealing with constant harassment of collection companies; (3) the humiliation and embarrassment of the lack of ability to pay for school tuition for his children; (4) bad credit affecting his ability to find gainful employment; (5) loss of income that prevented him from seeing his dying mother on a timely basis; (6) stress in his present marriage; (7) loss of ability to pay obligations mandated in a divorce decree and child custody agreement; (8) the humiliation and embarrassment of legal action against him by the District Attorney's Office because of his being labeled as a "deadbeat dad"; and (9) his son dropping out of high school because of his lack of ability to pay school tuition.
The plaintiffs' petition did not name the City of Monroe as a defendant in this case. The only defendant, Vantage, filed an exception of no cause of action. After a hearing on the exception, the trial court granted the exception of no cause of action and dismissed the plaintiffs' petition. The plaintiffs appealed.

DISCUSSION
The sole question on appeal is whether or not the plaintiffs' petition states a cause of action. The purpose of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law, based upon the facts alleged in the petition. Grocery Supply Company v. Winterton Food Stores, 31,114 (La.App.2d Cir.12/9/98), 722 So.2d 94. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. Evaluation of the exception is limited to the face of the pleadings, and the well-pleaded facts in the petition must be accepted as true. Stevens v. WalMart Stores, Inc., 29,124 (La.App.2d Cir.1/24/97), 688 So.2d 668. When the grounds of the objection pleaded by a peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court; if the grounds of the objection cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action shall be dismissed. La. C.C.P. art. 934. See also Webb Construction, Inc. v. City of Shreveport, 27,761 (La.App.2d Cir.12/6/95), 665 So.2d 653.
*582 The common law remedy for interference with a contract is based on the theory that there is a point beyond which no member of the community may go to intentionally meddle in the business affairs of another. MD Care, Inc. v. Angelo, 95-2361 (La.App. 4th Cir. 3/20/96), 672 So.2d 969, writ denied, 96-0986 (La.5/31/96), 673 So.2d 1039. Historically, a cause of action for tortious interference with a contract was not available in Louisiana. Kline v. Eubanks, 109 La. 241, 33 So. 211 (1902). However, in 9 to 5 Fashions Inc. v. Spurney, 538 So.2d 228 (La.1989), the Louisiana Supreme Court recognized a narrowly defined cause of action for the breach of duty by a corporate officer to refrain from intentionally and unjustifiably interfering with a contractual relationship between the officer's corporate employer and the particular plaintiff. Krebs v. Mull, 97-2643 (La.App. 1st Cir. 12/28/98), 727 So.2d 564, writ denied, 99-0262 (La.3/19/99), 740 So.2d 119; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991).
In 9 to 5 Fashions, Inc. v. Spurney, supra, the court stated that it did not intend to adopt "whole and undigested the fully expanded common law doctrine of interference with contract, consisting of `a rather broad and undefined tort in which no specific conduct is prescribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered in some undefined way.'" Krebs v. Mull, supra. The court recognized only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relationship between his employer and a third person. In 9 to 5 Fashions v. Spurney, supra, the court stated:
[A]n officer of a corporation owes an obligation to a third person having a contractual relationship with a corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.
9 to 5 Fashions, Inc. v. Spurney, supra, recognized that the action against a corporate officer for intentional and unjustified interference with contractual relations has separate elements: (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducing or causing the corporation to breach the contract or his intentional rendering of performance under the contract impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) causing damage to the plaintiff by breach of contract of by rendering performance of the contract impossible or difficult. See also Lynn v. Berg Mechanical, supra.
Subsequently, in Great Southwest Fire Insurance Company v. CNA Insurance Companies, 557 So.2d 966 (La.1990), the Louisiana Supreme Court reaffirmed its intention to proceed with caution in expanding a cause of action for interference with a contract. In Great Southwest, the court declined to recognize a cause of action for negligent interference with a contract. In that case, an excess liability insurer sued a primary insurer to recover for sums paid because of the primary insurer's alleged bad faith failure to defend and settle a suit. The court concluded that the primary insurer owed no duty of care or even of good faith performance to the excess insurer of its insured. In so holding, the court recognized that courts generally have refused "to cross the bright line that has traditionally marked negligence claims for economic harm as off limits which would require them to substitute a case-by-case adjudication on the issue of proximate cause." The court also noted that eminent tort scholars have observed *583 that many of the cases concerning the existence of an action for negligent interference with contract are best understood in light of a general inhibition in negligence law against compensation "for purely economic loss not the result of either bodily harm to the claimant or physical injury to property in which claimant has a propriety interest."
In Louisiana, this court has limited the application of 9 to 5 Fashions, Inc. v. Spurney, supra, to its facts. Where the interference alleged is beyond the cause of action created in that decision, the trial court is correct in denying the claim. A & W Sheet Metal, Inc. v. Berg Mechanical, 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 158.
The wisdom of the Louisiana Supreme Court's pronouncement in this area of the law recognizes the broad basis for delictual liability furnished by La. C.C. art. 2315, but also recognizes the need to avoid blurring the distinction between tort claims and contract claims. The rules governing contract disputes and breaches are separate from those governing offenses and quasi offenses, and these separate legal domains should not overlap unless there is a duty on the part of a person or legal entity, separate and apart from the obligations created by the terms of a contract. Thus, in Spurney, an exception to the general prohibition against an action for interference with contract was found because the court recognized a duty on the part of a corporate officer to a third person having a contractual relationship with the corporation to which the officer owed a fiduciary duty. On the other hand, in Great Southwest the court found no duty owed by a primary insurer to an excess insurer.
Subsequent opinions from Louisiana appellate courts have applied this duty analysis and have maintained the distinction between matters properly brought in tort and matters properly brought as contract actions. In MD Care, Inc. v. Angelo, supra, a prior employer of a physician brought suit against a present employer, alleging that the present employer had intentionally interfered with a contract between the prior employer and the physician. The defendant was alleged to have offered the physician money to cancel his agreement with the plaintiff, and the physician allegedly accepted. The trial court denied the defendant's exception of no cause of action, but the appellate court reversed. The appellate court observed that the plaintiff did not allege that the defendant misrepresented or suppressed the truth, and there was no allegation that the defendant acted with an improper motive or purpose. The court rejected the plaintiff's argument that public policy demands that a third person not interfere with a known contract between two others. The court stated that public policy did not demand the imposition of a duty under the facts alleged in that case, and that recognition of such a "broad, ill-defined duty" would ignore the supreme court's decision in Spurney not to adopt the fully expanded common law doctrine of interference with contract. See also A & W Sheet Metal, Inc. v. Berg Mechanical, Inc., supra, in which this court rejected a claim for intentional interference with a contract brought by one sub-subcontractor against another.
We find that the facts of this case do not meet the requirements of 9 to 5 Fashions, Inc. v. Spurney, supra. The defendant is not a corporate officer, nor does the defendant have a contract with the plaintiffs. Further, under the facts alleged, Vantage owes no duty to the plaintiffs. As in MD Care v. Angelo, supra, that there is no general duty based on public policy demands that a third person not interfere with a known contract relationship between others. As long as the "interference" is not brought about through some improper means, such as fraud or defamation, breach of contract is to be decided under contract principles, rather than tort principles. In the instant case, the plaintiffs do not allege any illegal or improper inducement by Vantage concerning the alleged abrogation of the contract. Nor, under the facts alleged in the plaintiffs' petition, do we detect the *584 existence of any duty, the breach of which could result in a recovery in tort. Accordingly, we affirm the trial court's granting of the exception of no cause of action.
Where the grounds for an exception of no cause of action may be removed by factual amendment, the judgment sustaining the exception should not dismiss the plaintiffs' petition until the plaintiffs are allowed a delay in which to amend. La. C.C.P. art. 934; Thornton v. Heritage Federal Savings and Loan Association, 459 So.2d 115 (La.App. 2d Cir.1984). In the present case, the trial court did not grant a delay for such an amendment. However, the plaintiffs have not objected to that portion of the trial court judgment. Also, it does not appear that the plaintiffs would be able to amend the petition to remove the grounds for the exception. Therefore, the trial court correctly dismissed the action without granting a delay in which to amend the petition.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment sustaining the exception of no cause of action in favor of the defendant, Vantage Healthplan, Inc., and dismissing the action at the plaintiffs' cost.
AFFIRMED.